UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND REQUIRING IMMEDIATE RELEASE FROM CUSTODY [6]**

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") (hereinafter "TRO Application") pending adjudication of his Petition for Habeas Corpus. ECF 6. Petitioner requests that the Court order his immediate release from custody and bar his re-detention absent compliance with all applicable requirements. *Id.* at 2. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

## I.    BACKGROUND

Petitioner Mojtaba Ramandi Fasihi ("Petitioner") filed this habeas petition on February 10, 2026. ECF 1. The petition alleges as follows:

Petitioner is a citizen of Iran who entered the United States on or about June 2, 2024. *Id.* ¶¶ 25-26. Petitioner was detained and ultimately taken into custody, first at Otay Mesa Detention Center and later at Adelanto Detention Facility. *Id.* ¶ 27. While detained, Petitioner requested asylum and was granted a Credible Fear Interview ("CFI"), where it was determined that Petitioner established a presumption of persecution. *Id.* ¶ 28. In addition to Asylum, Petitioner requested Withholding of Removal and relief under the Convention Against Torture ("CAT"). *Id.* ¶¶ 29-30. Petitioner remained in detention until December 1, 2024, when he was released on bond. *Id.* ¶ 31.

As a condition of Petitioner's release, he was required to report to Immigration and Customs Enforcement ("ICE") on several occasions, to send photos weekly to the Intensive Supervision Appearance Program ("ISAP"), and to wear an ankle bracelet. *Id.* ¶ 32. Petitioner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

alleges he complied with all conditions of release and the government offers no argument to the contrary. *Id.* ¶ 33; *see* ECF 8. On June 27, 2025, Petitioner was re-detained by ICE at his home. ECF 1 ¶ 34. Petitioner alleges he received no prior notice of ICE's intention to detain him and was given no information about why his release was revoked. *Id.* ¶ 37. Petitioner has remained in detention at Adelanto Detention Facility in Adelanto, California since this re-arrest. *Id.* ¶¶ 35-40. On January 5, 2026, Petitioner was granted an individualized bond hearing where it was determined by an Immigration Judge that Petitioner posed a flight risk; release on bond was therefore denied. ECF 8 at 2.

In the instant TRO Application, filed the same day as the petition, Petitioner requests that the Court enjoin Respondents James Janecka, Warden of the Adelanto Detention Facility; David Marin, Field Office Director of the ICE Los Angeles Field Office; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States (collectively "Respondents" or "government") from continuing to detain him. ECF 6 at 2. Petitioner's TRO Application restates the allegations in his Petition, that Petitioner was re-detained without prior notice, without information about why his supervision was revoked, and without a pre-deprivation hearing. *Id.* at 5-7.

On February 11, 2026, Respondents filed an opposition to the TRO Application. ECF 8. Respondents attach to their opposition the decision from Petitioner's January 5 bond hearing and notice of Petitioner's upcoming merits hearing on March 20, 2026. ECF 8-1. Respondents argue that Petitioner has already been granted sufficient process in the form of the January 5 bond hearing and has failed to establish any due process violation with respect to the hearing, that the outcome of the hearing is not reviewable by this Court, and that Petitioner has failed to exhaust administrative remedies. ECF 8 at 5-11. Petitioner filed a reply in support of his TRO Application on February 16, 2026. ECF 9.

## II.     LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John B. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

### III. DISCUSSION

#### A. Habeas Jurisdiction and Administrative Exhaustion

As an initial matter, Respondents contend this court lacks jurisdiction to consider Petitioner's request because: (1) the Court lacks jurisdiction to review government actions arising from Petitioner's removal proceedings, and (2) Petitioner must first exhaust administrative remedies by completing the appeal process with the BIA before seeking habeas relief, and (3) the determination denying Petitioner's bond is not reviewable by the Court. ECF 8 at 5-10. Petitioner argues that the Court's jurisdiction to review government actions is proper. ECF 9 at 2.

Respondents first argue that jurisdiction is barred under 8 U.S.C. §§ 1252(g) and (b)(9). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Section 1252(b)(9), titled "[c]onsolidation of questions for judicial review," provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

As a general matter, § 1252 is titled "[j]udicial review of orders of removal." The record does not indicate, and Respondents do not assert, that Petitioner is subject to a final order of removal. Rather, Respondents argue that Petitioner's re-detention stems from the government's decision to commence removal proceedings against him, and, as such, can only be appealed upon review of a final removal order. ECF 8 at 6-8.

The Court is not convinced. Petitioner does not ask the Court to review the government's decision to commence removal proceedings against him or the merits of his underlying requests for relief. Rather, Petitioner challenges the lawfulness of his re-detention. Nor is it apparent from the pleadings that the decision to re-detain Petitioner was directly related to the government's decision to commence removal proceedings. By Respondent's own admission, "for the purposes of § 1252, the Attorney General commences proceedings . . . when the alien is issued a Notice to Appear before an immigration court." ECF 8 at 7 (quoting *Herrera-Correra v. Unites States*, 2008 WL 11336833, *3 (C.D. Cal. Sept. 11, 2008). Based upon the records provided by the parties, Petitioner was issued a notice to appear on June 27, 2024, prior to his initial release. ECF 1-2. Petitioner was subsequently given notice of another individual hearing date on December 16, 2025, after he had already been re-detained for several months. ECF 8-1.

The Supreme Court has interpreted both §§ 1252(b)(9) and 1252(g) narrowly and has cautioned against reading too broadly into the jurisdictional limitations of the statute when a challenge is not directly related to a final order of removal or an action which is in itself a commencement of removal proceedings or adjudication of the merits. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-94 (2018) ("Interpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place."); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 997-1000 (9th Cir. 2025) ("§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders"; "We have held that § 1252(b)(9) does not does not bar claims that are 'independent of or collateral to the removal process.'").

Specifically, the Supreme Court has instructed that § 1252(g) should be read narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). In doing so, the Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to *all* claims arising from deportation proceedings." *Id.* (emphasis added).

Regarding § 1252(b)(9), Respondents cite the Supreme Court's decision in *Reno*, which referred to § 1252(b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review of all [decisions and actions arising from deportation proceedings]" to a court of appeals. *Reno*, 525 U.S. at 483. It is unmistakably clear, however, that § 1252(b)(9) was intended to "channel judicial review over final orders of removal to the courts of appeals," not "foreclose all judicial review of agency actions" touching on deportation proceedings writ large. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added in part). The Court explained that practically any question of fact or law related to immigration detention technically "aris[es] from" actions taken to remove a noncitizen "in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention." *Id.* But "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* at 293.

Here, Petitioner challenges the legality of his re-arrest, revocation of supervision, and re-detention, not the government's decision to commence removal or anything related to the merits of his removability. *See* ECF 1, 6. As such, the Court does not find § 1252 to bar the Court's jurisdiction to review the legality of his re-detention and revocation of supervision.

Respondents additionally argue the Court lacks jurisdiction because Petitioner's only remedy to request review of the January 5, 2026, decision to deny release is to file an appeal with the BIA. ECF 8 at 9-10. Respondents argue that Petitioner has not adequately established grounds for the Court to waive the exhaustion requirement.

While Petitioner's TRO Application does contain a challenge to the outcome of the January 5, 2026, hearing, Petitioner additionally challenges the legality of his re-detention and revocation of supervision, which took place in June 2025, months prior to the hearing Respondents rely on. The Court does not find Respondents' administrative exhaustion argument sufficient to bar its jurisdiction over this review. Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested, had his release revoked, and was re-detained. ECF 6 at 9-14. This court has *habeas* jurisdiction under § 2241 to consider these claims and will not deny the TRO Application on this basis. *See Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017); *Noori*, 2025 WL 2800149, at *5–8 (finding district court had *habeas* jurisdiction to consider a petition challenging the lawfulness of the detention and revocation of parole of an asylum seeker).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

Finally, Respondents argue review of the merits of the January 5 bond hearing is barred under 8.U.S.C. § 1226(e), which provides "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *See* ECF 8 at 11. However, "[t]hat provision does not . . . preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez*, 872 F.3d at 987 (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Id.* (cleaned up). The Court therefore similarly declines to find jurisdiction barred on this ground, finding its review of Petitioner's re-arrest, revocation of release, and re-detention appropriate under § 2241.

**B.    *Winter* Analysis**

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, and that the balance of hardships tips sharply in his favor.

   **1.    *Likelihood of Success on the Merits***

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 473 (2004). A petitioner "bears the burden of demonstrating that he is in custody in violation of the Constitution or laws or treaties of the United States." *Noori*, 2025 WL 2800149, at *5 (cleaned up).

Petitioner argues his arrest, the revocation of his release, and his re-detention violate his procedural due process rights under the Fifth Amendment because he was denied prior notice and an opportunity to be heard before a neutral arbiter. ECF 1 ¶¶ 25-43, 55-57. Respondents respond that Petitioner does not, and cannot, identify any due process violation that justifies habeas relief since he was given a bond hearing on January 5, 2026. ECF 8 at 11.

It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests. "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, e.g., *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding prison parolees have a due process liberty interest)).

Petitioner was initially released from detention after a determination that he posed neither a danger nor a flight risk, which Respondents do not contest. ECF 1 ¶ 31; *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. Nov. 20, 2017) (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025) (same); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *17 (E.D. Cal. Oct. 16, 2025) (same). As such, Petitioner has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). While the government has discretion in this respect, it is not unbounded. *See Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

always constrained by the requirements of due process.").

Based upon the facts in the record, the Court finds the risk of erroneous deprivation considerable here. Petitioner was neither arrested pursuant to a warrant nor provided written notice of the termination of his supervised release and an opportunity to be heard before he was re-detained. Additionally, Respondents held Petitioner in detention for over six months before he received a bond hearing, and he remains detained in their custody to this day. Petitioner thus appears to have been deprived of his liberty interest erroneously based on Respondents' failure to comply with Petitioner's rights under the Due Process Clause. *See Villa-Anguiano v. Holder*, 727 F.3d 873, 881 (9th Cir. 2013) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (quoting *Mathews*, 424 U.S. at 333).

Respondents argue due process was satisfied because Petitioner was granted a bond hearing before the Immigration Court on January 5, 2026. ECF 8 at 11. The Immigration Court's decision to deny bond six months *after* Petitioner was arrested and re-detained, however, cannot support Petitioner's continued detention when the underlying arrest, revocation of supervised release, and re-detention were in violation of Petitioner's due process rights and thus invalid.

The final *Mathews* factor is the government's interest. To the extent Respondents assert any purported interest the government maintains in Petitioner's continued detention, which is minimal, Respondents assert that Petitioner's detention is not prolonged, due to the existing likelihood of removal and upcoming merits hearing on March 20, 2026. *See* ECF 8 at 2. However, given Petitioner's assertion that he complied with all previous check-in requirements, which Respondents do not contest, this does not reflect an overriding assumption that such detention is necessary to ensure Petitioner's participation in removal proceedings. *See* ECF 1 ¶ 33. Respondents additionally do not offer *any* argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* his release was revoked and he was re-detained, as is generally required under *Zinermon*, 494 U.S. at 127. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, *12 (N.D. Cal. Sept. 12, 2025) (citing *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025)). Respondents thus fail to establish the government has significant interest in Petitioner's continued detention.

### 2. *Other Winter Factors*

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues there exists a strong public interest in guarding against unlawful government actions, ensuring compliance with the law, and reducing the costs of immigration detention. ECF 6 at 14-15. Respondents, focusing their opposition on jurisdictional issues and the sufficiency of process via the January 5 bond hearing, do not assert any counter arguments on this factor.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

**C. Scope of Relief**

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Petitioner seeks his immediate release. The government argues that if there was some defect in the process given, the proper remedy would be another bond hearing and not release. ECF 8 at 11.

For the reasons explained above, the Court is persuaded that a pre-deprivation hearing is warranted in this case, given Petitioner's substantial liberty interests. Other courts in this District have granted the same relief Petitioner seeks here. *See, e.g., Magomed Mumaev v. Semaia*, No. 5:25-cv-03409-FLA-MAR (C.D. Cal. Feb. 20, 2026); *Nona Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS (C.D. Cal. Feb. 2, 2026).

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00592-MRA-MBK | Date | February 24, 2026 |
|---|---|---|---|
| Title | *Mojtaba Ramandi Fasihi v. James Janecka et al.* | | |

## IV.  CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**.  The Court further **ORDERS** as follows:

1. Respondents shall release petitioner from immigration detention forthwith and shall not impose any release restrictions not imposed upon Petitioner's previous release unless deemed necessary at a future pre-deprivation bond hearing.

2. Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing.  At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and

3. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.  See L.R. 65-1.  Respondents shall file any written response to the Order to Show Cause no later than **March 3, 2026**.  Petitioner shall file a reply no later than **March 6, 2026**.  If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **March 6, 2026**.  The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 24, 2026,** and expires at 3:00 p.m. on **March 10, 2026**.  The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

___ : ___

Initials of Deputy Clerk    mku